## Phillips's Appeal.

1. A testator directed his executors to sell all his estate and divide it into eleven parts, to be invested "in some safe and good manner," and held by them in trust for the use of each of his children during the life of each, "so that the same shall not be liable for any of their debts or engagements;" the income of the daughters to be paid to them for their separate use, and as either of the children should die, such one's share to descend to his or her child or children, grandchild or grandchildren, in the same manner as if such child had been possessed of the share absolutely and had died intestate; but if either should die without child or other descendant, to go as such child by will should appoint. *Held*, to be an active trust, as the purposes of the testator could not be fulfilled without the possession by the executors of the fund.

2. Ashhurst's Appeal, 27 P. F. Smith 464; Earp's Appeal, 25 P. F. Smith 119, followed.

January 31st 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Philadelphia :* Of January Term 1874, No. 9. In the distribution of the estate of John Phillips, deceased.

The question in this case arose under the will of John Phillips, late of Philadelphia, who died March 6th 1868, leaving a will dated January 3d 1868 and proved March 14th 1868; letters testamentary were issued to the three executors, John L. Phillips, one of them, being the acting executor.

Amongst other things, testator directed as follows :—

"4. I direct my executors to sell and dispose of all my estate, real and personal, excepting mortgages and ground-rents, and I hereby give them full power to do so, either at public or private sale; * * * then I direct them, my said executors, together with two disinterested persons (to be by them my said executors chosen), to divide all my estate (after having paid as hereinbefore directed) into eleven equal parts or shares, and one of such parts or shares (to be designated by my executors and said two disinterested persons) shall be invested in some good and safe manner, and held by them, my said executors and the survivor and survivors of them, and the heirs, executors and administrators of such survivor, in trust for the use and benefit of each of my ten children, namely : Henrietta Catharine, the wife of Joseph B. Phipps, Horace Phillips, &c., for and during all the term of the respective life of each of said children, and so that the same shall not be liable for any of their debts or engagements; the income of my daughters to be paid them respectively, for their respective sole and separate use ; * * * and when, and as either of my said children shall die, then the share of him or her so dying 'shall descend to and vest in his or her child or children, or grandchild or children in the same way, shares and proportions as the same would have

descended to and vested in them, had my said child so dying been seised and possessed of such property absolutely, and had died intestate; and if any or either of my said children should die without leaving any child or other descendant, then the share of the one so dying without leaving any child or descendant, shall vest in such way and manner and for such uses and purposes as he or she by his or her last will * * * shall direct and appoint; and the other and remaining one-eleventh part of my said estate shall be invested in some good and safe manner and held by them my said executors, * * * in trust, for the use and benefit of my two grandchildren, Joseph Phillips and William Phillips, the children of my deceased son, Joseph W. Phillips, for and during all the term of the life of my said two grandchildren, and so that the same shall not be liable for any of their or either of their debts or engagements; and when either of my said two grandchildren shall die, then one-half part of said one-eleventh part of my estate shall descend to and vest in his child or children, or grandchild or children in the same way, shares and proportions as the same would have descended to and vested in them had he been seised and possessed of said property absolutely, and had died intestate; and if he should die without leaving any child or children, or grandchild or children, then the said property (the income whereof he is to have for life as aforesaid) shall vest in such way and manner, and for such uses and purposes, as he by his last will * * * shall direct and appoint; and the other and remaining one-half part of said one-eleventh part of my estate (the income whereof to be paid to the survivor of my said two grandchildren for his life in manner as aforesaid) shall on the decease of such survivor vest in his children or grandchildren in the same way, shares and proportions as the same would have descended to and vested in them, had he been seised and possessed of said property absolutely, and had died intestate; and in default of any child or other descendant, then the same shall descend and vest as he by his last will and testament, executed in the presence of two or more credible witnesses, shall direcct and appoint. * * *

"6. Such of my estate as I have directed to be sold shall be so sold, and my estate divided in manner as aforesaid, as soon as my said executors may think proper; but it shall be imperative on them to do so within three months after any five of my said children (or the representatives of any five of them) shall, by any writing, request them to do so; and until such division shall be made in manner as aforesaid, my executors shall manage my estate, and receive all the income thereof, and pay and divide the net income of the same to and among my said ten children and two grandchildren, in manner as I have designed they shall receive the same, as hereinbefore expressed."

The testator's two grandchildren, sons of his son, Joseph W.

Phillips, were minors, and resided in California with their mother, who had been appointed their guardian by the Probate Court of San Francisco. On the 28th of September 1871 the executors filed an account, which was referred to Samuel C. Perkins, Esq., to audit, &c., and report distribution. On the 25th of November 1871, Charles H. Hart, Esq., was appointed by the Orphans' Court of Philadelphia guardian of the minor children of Joseph W. Phillips, as above mentioned. One of the executors residing out of this state and not having given security, was incompent to act; another, Henrietta C. Phipps, who was also legatee of one-eleventh, died after the appointment of the auditor, leaving John S. Phillips the only executor and trustee under the will. Horace Phillips, another of the children and legatees, died August 4th 1872 intestate, without issue. The auditor corrected and restated the account, and thereby ascertained that the sum of $2224.57 of the "net income" was the proportion for the two minor grandchildren of the testator. The auditor then reported:—

"* * * The one-eleventh share of net income distributed as above under the bequest for the benefit of the two grandchildren, Joseph W. and William R. Phillips, also requires special notice. The auditor is of opinion that the testamentary trustees are in fact guardians of the estate of these two minors, with all the duties and responsibilities of guardians; and Mr. Hart did not claim as guardian to receive any portion of the estate, principal or income, bequeathed for the benefit of the minors. His appointment as such guardian was a proper measure of precaution in order to meet any question as to the minors being properly represented before the auditor; and in this capacity, as well as attorney for the guardian of the domicil, he occupies a position to contend fully for their rights in every respect. This court have power to control and direct the application of the income for the benefit of the minors as may be deemed advisable, by way of allowances for maintenance and education, and investment of the surplus, if any, or to direct the whole to be paid to the foreign guardian. Nor is this power different, or any the less, during the minority of the *cestui que trust*, even in cases where the trust may be held as continuing beyond their minority. It is for the mother of the minors therefore, as the guardian of the domicil, to make such application to this court as she may deem necessary and be advised, for the payment of the income to her, either in whole or in part, for their use and benefit. In accordance with the above views, until some order of this court be made, upon proper application as above suggested, Mr. Phillips, as testamentary trustee and as such guardian of the estate of the minors, is to hold the income belonging to Joseph W. and William R. Phillips for their use and benefit. * * *"

"In regard to the *distribution of the principal*, it would seem that the sale of such of the assets as were directed to be sold, in-

cluding the realty (except the ground-rents) not having been completed, and the time contemplated by the testator for the final division consequently not having arrived, there should be no division at present reported, but that John L. Phillips, as the only surviving executor qualified to act, should hold and manage the estate as heretofore, until the last piece of real estate (except the ground-rents) shall have been sold, and all the personalty held in cash or securities recognised by law, when a final account of the executorship can be filed, and the balance for distribution awarded to him as trustee, in equal eleventh parts, for the several *cestuis que trust*, subject to the equalization directed by the will. But Mr. Hart contended that, by the terms of the will, the legal estate in the share of the residuary bequest intended for the benefit of his wards, vested at once, and that therefore they were entitled to an award directly to themselves, ignoring the trust created or attempted to be created by the will. He further urged that by the death of Mrs. Phipps and Horace Phillips, the trust had become executed as to them, and the parties in remainder were entitled to a division of the estate, including the ground-rents, but excluding the rest of the unsold realty, at once. * * *

" So far as the real estate left by the testator is concerned, it vested, with the exception of the ground-rents, at his death, in his executors, for the purposes of sale, under the provisions of the Act of Assembly of 24th February 1834, sections 12 and 13, Pamph. L. 75; Bright. Purd. 282, pl. 62. A power to sell for the purposes of division or partition, is equivalent to an express devise to the executors or trustees for the purpose of sale : Brown & Sterrett's Appeal, 3 Casey 62; Parkinson's Appeal, 8 Id. 455. And the personal estate vests, for the purposes of administration, also, in the executors. But the entire estate, except the ground-rents, under the provisions of the will, which work a conversion, passes, as regards those beneficially interested, as personalty.

" It is clear, considering the language of the will, that the intention of the testator was to put his ten children and two grandchildren, named in the will, upon an exact equality, as the objects of his bounty, with the sole exception of the amount, the one-eleventh bequeathed to the latter, and which, it may fairly be presumed, would have been given to their father, if he had been living, being divided between them." * * *

The auditor them makes an elaborate argument with an extensive citation of authorities to establish that the trust in the executors was active and continuing ; and proceeds:—

" The result of this view of the auditor is that the estates to the children who had children living at the death of the testator, are of the same nature as those of the two other children and two grandchildren named in the will, to wit, absolute estates, but vested

in remainder after the expiration of the respective trusts for life. * * *

" The construction of the will as reported by the auditor gives full effect, it is respectfully submitted, to the intention of the testator, and prevents any possible intestacy which might perhaps happen on the failure to exercise the power of appointment, 'in default of,' or 'if he or she should die without leaving any child or other descendant.' The auditor cannot see how the death of Mrs. Phipps and Horace Phillips, although as to their shares the trust as to themselves personally is executed, can require or give any right to insist on a division at the present time, contrary to the express directions of the testator that his executors shall manage his estate and divide the income until the time fixed by him for the division of the principal shall have arrived. There is a general trust not fully executed, subsisting in the executors till the time arrives.

" As the time for the division of the estate has not yet arrived, therefore, Mr. John L. Phillips, as sole surviving qualified executor, is under the sixth item of the will to continue to 'manage' the estate 'and receive all the income thereof and pay and divide the net income of the same to and among' the said ten children and two grandchildren in manner as the testator 'designed they shall receive the same as thereinbefore expressed;' and consequently no distribution of the principal is at present to be awarded." * * *

Exceptions to the report were filed on behalf of Joseph W. and William R. Phillips, the minors:—

That the auditor erred,

2. In reporting that an estate is vested in the executors, whereas he should have reported that they have only the naked powers "to sell," "to invest" and "to hold for the use and benefit," which by Act of Assembly are enlarged for the purposes of sale only.

3. In reporting that the time for a division of the principal of the estate had not yet arrived.

4. In reporting that after division there will be active duties still incumbent upon the executor as trustee, in relation to the share of Joseph W. and William R. Phillips.

5. In reporting that there is a valid and subsisting trust under the will in favor of Joseph W. and William R. Phillips.

7. In reporting that there is an absolute estate in Joseph W. and William R. Phillips as to their respective shares, but that this estate is in remainder after the expiration of the trust for their lives, whereas he should have reported that an absolute estate vested in Joseph W. and William R. Phillips on the death of testator, free from all trusts, for their lives.

The Orphans' Court, Allison, P. J., overruled these exceptions and confirmed the report.

[Phillips's Appeal.]

The guardian of the minors appealed to the Supreme Court and assigned for error the overruling of the exceptions and confirming the auditor's report.

*C. H. Hart* (with whom was *J. A. Burton*), for appellants.—The question is whether there is a good and valid subsisting trust for the life of the appellants. No devise or bequest was made to the executors of his estate, but merely the naked powers given them " to sell," " to divide," " to invest," and then " to hold for the use and benefit," which by the Act of Assembly are enlarged for the purposes of sale only : Act of February 24th 1834, sec. 13 ; Pamph. L. 75, 1 Br. Purd. 418, pl. 71. Upon the testator's death, the legal title vested in his heirs, subject to being divested upon the exercise of the power of sale by the executors : Chew *v.* Nicklin, 9 Wright 84. If a testator wishes to give a life estate only to the first takers, with remainder to their heirs or to the heirs of their body, he must devise the legal estate to trustees· by certain and express words, and attach to the trust some active duty to be performed, to prevent the merging of the legal and equitable estate. The trust for Joseph W. and William R. Phillips, is a mere simple or dry trust. The only duty enjoined upon the trustee is to hold the share in trust for the use and benefit of Joseph W. and William R. Phillips, so that the same shall not be liable for any of their debts or engagements. There is no power to invest and re-invest for them, none to collect and pay over the income to them or suffer them to receive it. They are treated as being possessed of all powers as owners in fee. The legal title lasts in trustees only so long as they have a trust to perform : Hill on Trustees 239 ; Hawkins on Wills 143 ; Ralston *v.* Waln, 8 Wright 279. To hold " for the use and benefit," even where there is a devise to trustees, being simply passive, is executed by the statute, and the *cestui que trust* takes the estate : Hill on Trustees 235 ; Jackson *v.* Fish, 10 Johns. R. 456 ; Ramsey *v.* Marsh, 2 McCord 252 ; Laurens *v.* Jenney, 1 Spears 856 ; Hammersly *v.* Smith, 4 Wharton 128 ; Moore *v.* Shultz, 1 Harris 98 ; 2 Redfield on Wills 409 ; Knight *v.* Knight, 3 Beavan 148. An evident intention to create a trust will not control the operation of the statute : Lewin on Trusts 246 ; Carwardine *v.* Carwardine, 1 Eden 36. The expression, " So that the same shall not be liable for any of their debts or engagements," does not make an active trust : Keyser's Appeal, 7 P. F. Smith 236.

*J. J. Ridgway, Jr.*, for appellant, cited Earp's Appeal, 25 P. F. Smith 119 ; Deibert's Appeal, 28 Id. 296.

Judgment was entered in the Supreme Court, February 7th 1876,

PER CURIAM.—The trust here under the will of John Phillips was of the entire estate, after the sales of real and personal estate ordered by the testator to be made by his executors. It was an active trust, because the trust fund was to be invested by the executors in a good and safe manner, and to be held by them in trust for the beneficiaries, for their respective lives, so that the same should not be liable for their debts or engagements; the income was to be paid to the daughters personally during coverture; and when any one of the beneficiaries should die, the share of that one was to vest in his child or children in equal shares. These characteristics of the trust evidence an active trust; for the purposes of the testator could not be fulfilled without the possession and control of the executors over the invested fund. Earp's. Appeal, 25 P. F. Smith 119, and Ashhurst's Appeal, 27 Id. 464, may be referred to generally in support of this trust.

Decree affirmed with costs, and appeal dismissed.